UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RENO BELL ALEXANDER,

                Petitioner,

v.

UNITED STATES OF AMERICA,

                Respondent.

_____/

Criminal Case Number 03-20052
Civil Case Number 05-10225
Honorable David M. Lawson

**OPINION AND ORDER OVERRULING OBJECTIONS TO
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, ADOPTING
RECOMMENDATION, DENYING MOTION TO VACATE SENTENCE,
AND DENYING OTHER MOTIONS**

The petitioner, Reno Bell Alexander, was convicted of violating the Controlled Substances Act and sentenced to 120 months in prison. He filed a petition under 28 U.S.C. § 2255 to vacate his sentence, which the Court referred to Magistrate Judge Charles E. Binder for a report and recommendation. Judge Binder filed a report recommending that the petition be denied, and the petitioner filed timely objections. The Court has conducted a *de novo* review of the matter. The petitioner claims that his attorney did not provide constitutionally adequate assistance because the lawyer failed to raise a challenge to the validity of the distinction drawn in the Controlled Substances Act between cocaine powder and cocaine base and the harsher penalty attached to the latter. The petitioner's objections clarify that he believes his attorney should have urged the Court to apply the rule of lenity to the statute the petitioner believes to be ambiguous, and to raise an equal protection challenge. The Court concludes that the petitioner's objections lack merit, the magistrate judge correctly decided the issues, and the petition should be denied for the reasons set forth in the report and for additional reasons set forth below.

I.

On November 19, 2003, a grand jury indicted the petitioner for distribution of 50 or more grams of crack cocaine and conspiracy. Attorney Eric E. Proschek was appointed to represent the petitioner under the Criminal Justice Act. Mr. Proschek successfully negotiated a plea agreement with the government, which was reduced to writing and signed on April 12, 2004. The plea agreement called for the petitioner to plead guilty to the distribution count, the conspiracy count would be dismissed, and the sentence would be limited to the midpoint of the Sentencing Guidelines range determined by the Court.

At the plea hearing, the Court explained to the petitioner that one of the essential elements of the crime was "that the controlled substance you distributed was cocaine base. That's also known as crack cocaine." Plea Tr. at 25. The petitioner confirmed that he understood and indicated that he believed the government could prove this element beyond a reasonable doubt. *Id.* at 26. The petitioner later explained that he believed he was guilty of the charged offense because he "gave an undercover officer some crack cocaine." *Id.* at 33-34.

A sentencing hearing was conducted on August 24, 2004. The offense level scoring under the Sentencing Guidelines was discussed on the record, but the Sentencing Guidelines range was driven largely by the statutory mandatory minimum sentence required for crimes involving 50 grams or more of cocaine base. *See* 21 U.S.C. § 841(b)(1)(A)(iii). The petitioner was sentenced to a prison term of 120 months. The petitioner did not appeal his conviction or sentence.

On August 26, 2005, the petitioner filed the present motion to vacate his sentence pursuant to 28 U.S.C. § 2255. In his motion, he argues that his conviction was obtained in violation of the Sixth Amendment because his attorney failed to investigate the nature of the substance and failed to inform the plaintiff of the consequences of pleading guilty to distribution of crack cocaine. He

also argues that he was innocent of the underlying crime in that he did not distribute crack cocaine, but only cocaine base. This argument was amplified in the objections, which describe a claim that there is no meaningful difference between cocaine powder and cocaine base, and the greater penalties for cocaine base are unjustified.

In its response to the motion to vacate, the government has included an affidavit by Mr. Proscheck in which he states that he reviewed the police reports in this case, including a laboratory analysis that found the drugs possessed by the petitioner to consist of 52.03 grams of cocaine base. Proscheck averred that he met with the petitioner in November 2003 and they discussed the police report and laboratory results. The petitioner confirmed the accuracy of the reports and admitted he had agreed to be part of a crack deal; he "never disputed that the cocaine was in [the] form of crack." Resp. to Mot. to Vacate, Ex. A, Aff. of Proscheck at ¶ 5. Proscheck states that their "discussions were limited to crack cocaine, not cocaine powder, which was never in dispute." *Id.* at ¶ 9. The affidavit is uncontested.

On February 27, 2006, Magistrate Judge Binder issued his report recommending that the motion to vacate be denied because there was no suggestion that defense counsel performed deficiently. The petitioner's objections are based on his assumption that there is no meaningful difference between cocaine and cocaine base (also known as "crack"). He claims that there is no way to scientifically define cocaine base in a way that distinguishes it from other forms of cocaine. The petitioner contends that a number of chemical tests fail to indicate distinctions between powder cocaine and cocaine base, and he claims that cocaine base and powder cocaine have the same molecular structure and chemical qualities, and both can be smoked.

From this premise, the petitioner attacks the validity of 21 U.S.C. § 841(b)(1)(A)(iii), arguing that the statute imposes a harsher punishment upon those dealing in cocaine base when that substance is actually no different than powder cocaine. He says that his attorney performed deficiently by failing to appreciate this distinction and act accordingly by securing a lesser sentence for the petitioner and challenging the statute as a violation of the Equal Protection Clause.

II.

A federal prisoner challenging his sentence under section 2255 must show that the sentence "was imposed in violation of the Constitution or laws of the United States," the sentencing court lacked jurisdiction, the sentence exceed the maximum penalty allowed by law, or "is otherwise subject to collateral attack." 28 U.S.C. § 2255. The petitioner invokes the Sixth Amendment as the basis for relief. The Supreme Court has "emphasized that the Sixth Amendment right to counsel exists 'in order to protect the fundamental right to a fair trial.'" *Lockhart v. Fretwell*, 506 U.S. 364, 368 (1993) (quoting *Strickland v. Washington*, 466 U.S. 668, 684 (1984)). "In *Strickland*, [the Court] identified the two components to any ineffective-assistance claim: (1) deficient performance and (2) prejudice." *Id.* at 368. *See also Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Court has "declined to articulate specific

guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

The petitioner does not dispute that he distributed the drugs in this case, nor does he recant his statements made at the plea hearing. Rather, his argument that there should be no penological distinction between cocaine base and cocaine powder appears to be inspired by his reading of *United States v. Davis*, 864 F. Supp. 1303 (N.D. Ga. 1994). In *Davis*, the defendants, who pleaded guilty to possession of cocaine base with the intent to distribute, challenged the validity of 21 U.S.C. § 841(b)(1)(A)(iii) by arguing that the rule of lenity required the court to apply the penalty for cocaine powder because it is virtually indistinguishable from cocaine base. The district court agreed. After holding an evidentiary hearing, the *Davis* court found that the term "cocaine base" is synonymous with "cocaine" in the scientific community, and that the term "crack" has no fixed meaning in the scientific community. The court noted that the substance commonly called "crack" is simply cocaine that has been mixed with water and baking soda, heated, and then "cracked" into small rocks

of smokable cocaine. Looking to section 841(b), the court observed that the statute provides one penalty for offenses involving cocaine and another for offenses involving cocaine base. However, since the court found these terms to describe the same chemical substance, it determined that the statute was facially ambiguous with respect to the authorized penalties. The court's analysis of the legislative history did not eliminate this ambiguity. Accordingly, the court was compelled to apply the rule of lenity and impose upon the defendants the lesser penalty for powder cocaine.

The *Davis* rationale has not been adopted by any subsequent court, and its holding has been discredited by the Eleventh Circuit. *See United States v. Sloan*, 97 F.3d 1378, 1382-83 (11th Cir. 1996) (holding that "Congress intended to single out a subset of cocaine-related substances, all forms of cocaine base, for harsher treatment. . . . As a result, the higher penalty provisions prescribed for cocaine base must be applied to persons . . . who distribute the rock-like form of cocaine base, while the lesser cocaine penalties must be interpreted as applying to cocaine-related substances, such as the salts"); *United States v. Terry*, 60 F.3d 1541, 1544 (11th Cir. 1995) (finding that Congress singled out crack cocaine offenses for harsher treatment "because crack cocaine is more dangerous, more highly addictive, more easily available, and less expensive that powder cocaine"). The Sixth Circuit also has had occasion to address the validity of 21 U.S.C. § 841(b) and the distinction it draws between cocaine and cocaine base. In *United States v. Levy*, 904 F.2d 1026 (6th Cir. 1990), the court of appeals rejected a challenge to section 841(b) on vagueness grounds. The appellant argued that the statute failed to sufficiently identify the nature of "cocaine base" and, as such, was void for vagueness. The court of appeals was unconvinced, finding that cocaine base (i.e., crack cocaine) and powder cocaine could be distinguished in meaningful ways and that "the statute, as drafted, presents no question as to the substance Congress described as cocaine base." *Id.* at 1033;

*see also United States v. Smith*, 73 F.3d 1414, 1417-18 (6th Cir. 1996) (declining invitation to overturn *Levy* and rejecting *United States v. Davis*, 864 F. Supp. 1303 (N.D. Ga. 1994)).

In addition, the Sixth Circuit rejected an equal protection challenges to 21 U.S.C. § 841(b) in *United States v. Williams*, 962 F.2d 1218 (6th Cir. 1992). The court addressed the 100-to-1 ratio between powder and crack cocaine and the equivalent penalties and concluded that Congress had a rational basis for imposing harsher penalties for significantly lesser quantities of cocaine base. The court stated that "Congress was concerned that crack is a purer drug than cocaine and the speed with which it progresses to the brain 'produces a significantly different effect that increases the likelihood of addiction.'" *Id.* at 1227 (quoting *United States v. Pickett*, 941 F.2d 411, 418 (6th Cir. 1991)). The court also pointed to the congressional finding that cocaine base was smaller, cheaper, and easier to transport and use, thereby exacerbating addiction tendencies, as justification for treating the trafficking in such substance with harsher penalties. Other cases within the Circuit have echoed those observations. *See United States v. Avant*, 907 F.2d 623, 627 (6th Cir. 1990) ("In enacting stiffer sentences for crack cocaine, Congress apparently intended to combat what it perceived to be the greater danger of crack cocaine."); *United States v. Tinker*, 985 F.2d 241, 242 (6th Cir. 1992) (per curiam).

The arguments that the petitioner believes his attorney should have advanced were well settled at the time of the plea and sentencing in this case. Mr. Proschek's failure to make them cannot be found to constitute conduct that fell below established professional norms. "An attorney's ethical obligation of zealous advocacy on behalf of his or her client does not amount to *carte blanche* to burden the federal courts by pursuing claims that are frivolous on the merits." *Wilson-Simmons v. Lake County Sheriff's Dep't*, 207 F.3d 818, 824 (6th Cir. 2000) (internal quotation marks

omitted); *see also United States v. Hart*, 933 F.2d 80, 83 (1st Cir. 1991) (holding that "[f]or judges to second-guess reasonable professional judgments and impose upon appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy").

Nor can the petitioner show prejudice. The law decidedly was against the petitioner's position, and even if his attorney had made the arguments, there is little chance that the result of the proceedings would have been different.

Well after the petitioner filed his motion to vacate the sentence in this case, he filed several other motions, including a motion to supplement his section 2255 motion. The motion to supplement does not specify any new grounds, and to the extent that new arguments are not related to the present claims, a supplement would be untimely. Motions to vacate sentences filed under section 2255 must be made within one year of the date the conviction becomes final. 28 U.S.C. § 2255 para. 6. A federal criminal judgment that is not appealed becomes final for the purpose of section 2255 ten days after it is entered, that is, when the time for filing a direct appeal expires. *Sanchez-Castellano v. United States*, 358 F.3d 424, 427-28 (6th Cir. 2004). The petitioner's conviction was final on September 4, 2004; the due date for a section 2255 motion was September 4, 2005; the motion to supplement was not filed until November 1, 2006. Ordinarily, amendments to pleadings relate back to the filing date of the original pleading when the new claim arises from the same transaction or occurrence as set forth in the original pleading. Fed. R. Civ. P. 15(a)(2). However, the Supreme Court has held that amendments asserting new claims based on different facts do not relate back to the original pleadings and therefore do not "escape the AEDPA's one-year time limit." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). Any new claims not so related would not

relate back to the filing date of the original motion. The petitioner may not now amend his motion to vacate because the new claim is untimely.

The petitioner's other motions are rendered moot by the decision in the present order.

III.

The Court finds that the petitioner's objections to Magistrate Judge Binder's report and recommendation lack merit. The petitioner is not entitled to relief on either of his Sixth Amendment claims. His other motions lack merit or are moot.

Accordingly, it is **ORDERED** that the petitioner's objections to the magistrate judge's report and recommendation [dkt # 72] are **OVERRULED**.

It is further **ORDERED** that the report and recommendation [dkt # 69] is **ADOPTED**.

It is further **ORDERED** that the petitioner's motion to vacate his sentence [dkt # 60] is **DENIED**.

It is further **ORDERED** that the petitioner's motions for leave to supplement his motion to vacate sentence [dkt # 73], motion to correct illegal sentence [dkt #74], motion for release pending decision [dkt #75], motion for discovery [dkt #76], motion to substitute counsel [dkt #77], and motion for withdrawal of attorney [dkt #79] are **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: June 28, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 28, 2007.

        s/Felicia M. Moses
        FELICIA M. MOSES